```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
                                                                   :
                                                                   :
RAHEEM SESSOMS,                                                    :
                                                                   :    20-CV-509-ARR-SJB
                                       Plaintiff,                  :
                                                                   :
                                                                   :    NOT FOR ELECTRONIC OR
           -against-                                               :    PRINT PUBLICATION
                                                                   :
                                                                   :
THE COUNTY OF SUFFOLK, SUFFOLK COUNTY                              :    OPINION & ORDER
POLICE DETECTIVE PETER BARBA, and                                  :
UNIDENTIFIED SUFFOLK COUNTY POLICE                                 :
OFFICERS #1-10,                                                    :
                                                                   :
                                                                   :
                                       Defendants.                 :
                                                                   X
------------------------------------------------------------------
```

ROSS, United States District Judge:

Defendants move for summary judgment on all claims advanced by plaintiff Raheem Sessoms. For the reasons set forth below, I grant the motion in its entirety.

## BACKGROUND[1]

On the evening of May 27, 2017, plaintiff entered Vin's Ultimate Hair Care in Central Islip, New York. Defs.' Rule 56.1 Statement in Supp. Mot. Summ. J. ¶¶ 1–2 ("Defs.' 56.1"), ECF No. 49-2. While the barber, Vincent Carr, was giving Sessoms a haircut, two individuals

---

[1] The following facts are taken from the parties' filings, depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts. *See Nnebe v. Daus*, 644 F.3d 147, 155–56 (2d Cir. 2011). Citations to a party's 56.1 statement incorporate the evidentiary materials cited therein. Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any evidence in the record to contradict it. *See* E.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id*. Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). Plaintiff disputes the admissibility of much of defendants' evidence. I address plaintiff's admissibility arguments in Section I, *infra*.

came to the door. *Id.* ¶ 5. According to Carr's statement to the Suffolk County Police Department, these two individuals told him that Sessoms was their cousin and Carr let them into the store. *Id.* ¶ 6; Decl. of Stacy Skorupa in Supp. Mot. Summ. J. ("Skorupa Decl."), Ex. A ("Carr Statement") 1, ECF No. 49-4; *see also* Pl.'s Rule 56.1 Statement in Opp'n Mot. Summ. J. ¶ 6 ("Pl.'s 56.1"), ECF No. 49-17 (disputing the admissibility of Carr's statement but agreeing he told police this information). The two individuals then pulled out pistols, pointed them at Carr, ordered him to the ground, hit him in the back of the head with one of the guns, and robbed him. Defs.' 56.1 ¶¶ 6–7. Carr told police that Sessoms continued to sit in the chair while the robbery occurred and that Sessoms was not robbed. *Id.* ¶ 8; Carr Statement 1.

Detective Sergeant John Diffley and Detective Steven Ziegler responded to the scene of the robbery, joining uniformed officers already on the scene. Defs.' 56.1 ¶ 10. The police stopped another man, Parish Tomoney, and Carr identified him as one of the two robbers, although the parties dispute which police officer took Tomoney into custody, and when. *Id.* ¶ 11; Pl.'s 56.1 ¶ 11 (noting that Diffley did not witness the arrest and Ziegler did not interact with Tomoney until they returned to the police precinct). Tomoney was apprehended in Sessoms's car with proceeds of the robbery.[2] Defs.' 56.1 ¶ 12. Tomoney confessed to police and was charged with Robbery in the First Degree. *See* Skorupa Decl., Ex. C, ECF No. 49-6.

---

[2] Plaintiff disputes this fact as not a product of admissible evidence and also contends that the fact that it was plaintiff's car is not established by the documentary evidence in the case. *See* Pl.'s 56.1 ¶ 12. I address plaintiff's admissibility arguments in Section I, *infra*. The documentary evidence makes clear that defendant Detective Barba had been informed that Tomoney was in plaintiff's car when Tomoney was apprehended, because otherwise Barba could not have informed Sessoms of this fact. *See* Skorupa Decl., Ex. E ("Sessoms Felony Compl."), ECF No. 49-8 (reflecting Sessoms's response to being informed that one of the robbers was found in his car). Mr. Tomoney's statement to police also suggests that he was apprehended in the car. *See* Skorupa Decl., Ex. D ("Tomoney Statement") 1–2, ECF No. 49-7 ("I was alone in the car when the cops pulled up . . . .").

2

Detective Ziegler interviewed Carr at the scene and later at the police precinct. Defs.' 56.1 ¶¶ 15, 21. Plaintiff initially told officers that because he was on parole, he was not allowed to speak with police without permission. *Id.* ¶ 25. Once an officer spoke with the officer handling Sessoms's parole, Sessoms voluntarily accompanied police to the precinct to make a statement. *See* Defs.' 56.1 ¶ 27; Pl.'s 56.1 ¶ 27. Upon returning to the precinct, Detective Ziegler requested Detective Barba's assistance with the investigation, including interviewing Sessoms. Defs.' 56.1 ¶ 31. During the interview, Sessoms told Detective Barba that he had told officers that his phone had been taken in the robbery. *Id.* ¶ 35. At the conclusion of the interview, Detective Barba arrested Sessoms and subsequently swore a felony complaint against Sessoms for Robbery in the First Degree. *Id.* ¶ 33; Sessoms Felony Compl. In Tomoney's confession dated May 28, 2017, Tomoney stated that after the robbery, he "ran back to the car [he] came in," but refused to explicitly name any co-conspirator. *See* Tomoney Statement 1–2.

The criminal case against Mr. Sessoms was dismissed on January 26, 2018. *See* Am. Compl. ¶ 21, ECF No. 10. Plaintiff asserts claims for false arrest, abuse of process, and malicious prosecution against Detective Barba pursuant to 42 U.S.C. § 1983, and a municipal liability claim against Suffolk County under the same statute. *See generally id.*

### LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court at this juncture is not to resolve disputed issues but rather to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In determining whether a genuine issue of material fact exists, "[t]he evidence of the nonmovant is to be

3

believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. *Id.* at 255 (citation omitted). "In reviewing the evidence and the inferences that may reasonably be drawn, [I] may not make credibility determinations or weigh the evidence. . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (omission in original) (citations and internal quotation marks omitted). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, . . . materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (alteration in original) (quotation omitted).

Once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). The moving party "may obtain summary judgment by showing that little or no [admissible] evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994); Fed. R. Civ. P. 56(c)(1)(B). The nonmovant "may not survive summary judgment merely by conjuring a hypothetical issue of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015). In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts[] and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations and internal quotation marks omitted).

## DISCUSSION

**I.     The Sources of Detective Barba's Knowledge Are Admissible**

Many of plaintiff's arguments rely upon the facts that Detective Barba did not himself interview Mr. Carr, that Detective Ziegler and Detective Sergeant Diffley did not personally find Mr. Tomoney in plaintiff's vehicle, and other objections based upon lack of personal knowledge. *See, e.g.*, Pl.'s 56.1 ¶ 6 (contending Carr's statement to police describing the robbery is not admissible), ¶ 12 (contending evidence that "Tomoney was located and arrested in the car that belonged to Sessoms" is not admissible because Diffley did not witness it and Ziegler arrived after Tomoney had been taken into custody), ¶ 35 (contending the basis of probable cause listed in defendants' Rule 56.1 statement is not supported by admissible evidence). Plaintiff contends that "[n]one of the police witnesses nor [d]efendant Barba have 'personal knowledge' and therefore all statements attributed to them in [d]efendants' Rule 56.1 statement are inadmissible." Pl.'s Mem. in Opp'n Mot. Summ. J. 12 ("Pl.'s Opp'n"), ECF No. 49-16.

Plaintiff's arguments fail to explain why the "fellow officer" doctrine should not apply. In general, "when making a probable cause determination," police officers are "entitled to rely on the allegations of fellow police officers." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). The arresting officer need not be the direct recipient of information bearing on probable cause; the "primary focus . . . is whether the law enforcement officers . . . on whose instructions or information the actual . . . arresting officer[] relied, had information that would provide reasonable suspicion or probable cause to search or arrest the suspect." *United States v. Colon*, 250 F.3d 130, 135–36 (2d Cir. 2001). Plaintiff's argument on this front is that "where an arrest is challenged for lack of probable cause, reliance on information from another officer does 'not create probable cause to justify the arresting officer's actions.'" Pl.'s Opp'n 11 (quoting *Jackson v. City of New York*, 939 F. Supp. 2d 235, 256 (E.D.N.Y. 2013)). However, this is an over-

reading of the holding in *Jackson*, which declined to apply the fellow officer rule based on the factual circumstances—the reporting officer had ambiguously requested "non-emergency backup" and no evidence in the case clarified what information was reported to the arresting officers. 939 F. Supp. 2d at 256–57. *Jackson* did not hold that, merely because the plaintiff alleged there was no probable cause to arrest, the fellow officer rule did not apply.

At the time of Sessoms's arrest, Detective Barba had been told that Mr. Tomoney was found in plaintiff's car, *see* Sessoms Felony Compl. Moreover, Barba was present when Mr. Carr told Detective Ziegler that Sessoms was not robbed, *see* Barba Dep. Tr. 26:13–23, 27:22–28:3, Skorupa Decl., Ex. G, ECF No. 49-10 (testifying that he witnessed Carr's statement to Zeigler until "[Carr] said that they left the barber shop"). The first piece of information is comfortably within the fellow officer rule, and the second was personally witnessed and is not hearsay because it is offered for its effect on Detective Barba's investigation, not to prove the truth of whether or not Sessoms was robbed. *See* Fed. R. Evid. 801(c)(2).

## II.     Probable Cause to Arrest Existed Based on Undisputed Facts
### A. Applicable Law

Sessom's § 1983 claim for false arrest derives from his Fourth Amendment right to remain free from unreasonable seizures, including the right to be free from arrest without probable cause. *See Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). "In analyzing § 1983 claim for unconstitutional false arrest, [courts] have generally looked to the law of the state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, a finding of probable cause to arrest "is an absolute defense to a false arrest claim." *Soto v. City of New York*, 132 F. Supp. 3d 424, 444 (E.D.N.Y. 2015) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013)). Probable cause to arrest exists where the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are

6

sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quotation omitted). The inquiry focuses on "only those facts available to the [arresting] officer *at the time of the arrest* and immediately before it." *Stansbury*, 721 F.3d at 89 (emphasis added) (quotation omitted). An arresting officer is "not required to explore and eliminate every plausible claim of innocence before making an arrest." *Jaegly*, 439 F.3d at 153. Further, "[p]robable cause can exist solely based on information from an alleged victim . . . 'unless circumstances raise doubt as to the person's veracity.'" *Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 197 (E.D.N.Y. 2010) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 69–70 (2d Cir. 2001)).

Under New York law, "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime . . . he or another participant" either "[c]auses serious physical injury to any person who is not a participant in the crime; or [i]s armed with a deadly weapon; or [u]ses or threatens the immediate use of a dangerous instrument; or [d]isplays what appears to be a pistol . . . ." N.Y. Penal Law § 160.15.

### B. Discussion

Plaintiff argues that there is a dispute of fact as to the veracity of Mr. Carr's statements to police under the circumstances. Sessoms contends that because Carr told police that he did not see the robbers "at all," Detective Barba should have doubted the accuracy of Carr's statements about Sessoms because "[Carr] was not in a position to observe if they robbed the [p]laintiff or not." Pl.'s Opp'n 12 (quoting Carr Statement). Plaintiff's reliance on Carr's statement that he did not see the robbers "at all" is misplaced. First, reading Mr. Carr's statement in context reveals that he told Detective Ziegler that he didn't see the robbers "at all" when they fled the barber shop, not throughout the robbery. *See* Carr Statement 1 ("I did not see them leave from where I was laying down, I heard the door close and I didn't see them at all."). Second, Detective Ziegler

7

testified that he interviewed Mr. Carr concerning his position within the barber shop during the robbery and learned that Carr laid on the ground directly in front of the chair plaintiff was sitting in, with his left cheek on the ground and the right facing the ceiling, such that he could see plaintiff during the robbery. *See, e.g.*, Zeigler Dep. Tr. 93:9–94:20, Skorupa Decl., Ex. I, ECF No. 49-12. Although police are "not required to eliminate every possible line of impeachment that might apply to a victim complainant," *Koester v. Lanfranchi*, 288 F. App'x 764, 766 (2d Cir. 2008), Detective Zeigler did so here, and plaintiff has not raised a dispute as to Zeigler's account of Carr's explanation of how he could see Sessoms during the robbery. Accordingly, Mr. Sessoms has not raised a dispute of material fact as to Mr. Carr's veracity.

Based on the information known to Detective Barba at the time he arrested plaintiff, probable cause existed for Mr. Sessoms's arrest on the charge of Robbery in the First Degree. The commission of this crime is not disputed—the parties agree Tomoney and another individual entered the barber shop, drew guns, and took property from Mr. Carr. The only dispute is whether there was sufficient information known to Detective Barba at the time of plaintiff's arrest to conclude that plaintiff was also a participant. When he arrested plaintiff, Barba knew both that Tomoney was found in Sessoms's car with robbery proceeds and was told by Carr that Sessoms had not been robbed and did not move while the robbery took place.[3] Barba was entitled to rely on fellow officers' and the victim's allegations in determining to arrest Sessoms. *Simonetti*, 202 F.3d at 634.

---

[3] Defendants also characterize the evidence as demonstrating that it "appeared Tomoney was waiting for the owner of the vehicle to come back and take him" when he was arrested. Defs.' 56.1 ¶ 35. I have reviewed the portion of the record cited for this proposition and find no support for it. *See* Barba Dep. Tr. 82:2–84:25. Similarly, plaintiff contends the record shows that he was also a victim of the robbery, *see* Pl.'s Opp'n 6–7, but there is no suggestion in the record that he told police that anything other than his cell phone was taken.

This information provided sufficient probable cause to arrest plaintiff. First, in cases where a victim directly identifies a perpetrator, that statement alone can provide probable cause to arrest. *See O'Brien v. City of Yonkers*, No. 07-CV-3974 (KMK) (LMS), 2013 WL 1234966, at *9 (S.D.N.Y. Mar. 22, 2013) (collecting cases). Although Carr did not directly identify Sessoms as a perpetrator, his description of plaintiff's behavior and the robbers' inattention to plaintiff strongly supports the inference that Sessoms was a participant in the robbery. Second, a perpetrator of the robbery was found in plaintiff's car. While "[p]hysical proximity to criminal behavior without more is insufficient to establish probable cause," *Perez v. Duran*, 962 F. Supp. 2d 533, 538 (S.D.N.Y. 2013), this association between Tomoney and Sessoms goes beyond the paradigm of these cases, which typically involve arrests of suspected drug dealers in "drug-prone area[s]," *see Virgil v. City of New York*, No. 17-CV-5100 (PKC) (SMG), 2019 WL 4736982, at *5 (E.D.N.Y. Sept. 27, 2019) (finding plaintiff's handshake with another individual in an area known for drug transactions insufficient to support probable cause).

Nor does the fact that Sessoms informed Detective Barba that his phone had been taken obviate probable cause to arrest. The mere fact that Sessoms's story conflicted with Carr's does not, standing alone, create a dispute of fact as to whether probable cause existed. "[T]he arresting officer does not have to prove plaintiff's version [of events] wrong before arresting him." *Curley*, 268 F.3d at 70 (upholding finding of probable cause to arrest where plaintiff and victim told police conflicting stories); *see also Carthew*, 709 F. Supp. 2d at 199–200 (fact that officer was informed by plaintiff that plaintiff was entitled to be on premises insufficient to create factual dispute as to probable cause to arrest plaintiff where issue was whether plaintiff violated an order of protection).

9

### C. Other Factual Disputes are Not Material

The other factual disputes identified by plaintiff would not alter a finding of probable cause. Plaintiff identifies three statements made by Detective Zeigler to the Suffolk County Police Internal Affairs Unit ("IAU") about the basis of Sessoms's arrest, attacking his credibility by noting that the facts Zeigler referenced as supporting probable cause were not memorialized. *See* Pl.'s Opp'n 16 (noting that Zeigler told IAU (1) that Carr stated no property was taken from Sessoms during the robbery; (2) that Carr told him Sessoms did not confirm or deny that the robbers were his cousins; and (3) that Zeigler interviewed plaintiff at the scene). However, the relevant inquiry is what information was known to the arresting officer—Detective Barba—at the time of the arrest. *Stansbury*, 721 F.3d at 89. The fact that Detective Zeigler did not memorialize certain facts he recalled in a subsequent IAU investigation thus has no impact on the analysis of Detective Barba's knowledge.

Plaintiff also raises a factual dispute as to whether he made an "admission" to Detective Barba. Upon being told that Mr. Tomoney was found in his car, plaintiff responded "[o]ne of the guys was arrested in my car?" Sessoms Felony Compl. Detective Barba testified that plaintiff was "surprised" when he made this statement. Barba Dep. Tr. 22:1–8. In the felony complaint, Barba described Sessoms's statement as an "oral admission." Sessoms Felony Compl. This ambiguous statement admits of two interpretations: (1) that plaintiff was truly surprised that a perpetrator of the robbery was in his car, or (2) Detective Barba's apparent interpretation that plaintiff was surprised because his co-conspirator in the crime had been apprehended in his vehicle. On summary judgment, I take all justifiable inferences in the non-movant's favor and therefore accept the former interpretation. However, this dispute is not material. As already discussed, the totality of the circumstances in this case supports the finding of probable cause to arrest Sessoms. Plaintiff's reaction when informed of the fact that Parish Tomoney was found in

his car would not impact the finding of probable cause to arrest, and accordingly this factual dispute does not defeat summary judgment. *See Jaegly*, 439 F.3d at 153 (finding no reasonable jury could find lack of probable cause even where plaintiff "claimed that he had a valid explanation for his actions" prior to arrest).

Finally, plaintiff notes that his lack of conviction on the charged count is admissible evidence as to the lack of probable cause. Pl.'s Opp'n 14. "[E]vidence of a subsequent dismissal . . . [is] admissible to refute [the affirmative defense] of justification" for arrest. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)). Plaintiff does not explain how the dismissal of charges against him refutes the other evidence of probable cause in this case. The certificate of disposition merely reflects that the dismissal was in the interests of justice. *See* Decl. of Amy Marion in Opp'n Mot. Summ. J., Ex. 2, ECF No. 49-20. Although the case law "allow[s] admission of an acquittal to inform the probable cause analysis in false arrest claims," *see Morel v. Reed*, No. 11-CV-1808 (DLI) (LB), 2015 WL 3755976, at *2 (E.D.N.Y. June 16, 2015) (collecting cases), I am aware of no case in which a dismissed charge, standing alone, defeated summary judgment on the basis of probable cause. I find that the dismissal of the charges against plaintiff do not prevent granting summary judgment.

Taking the evidence in the light most favorable to plaintiff, no reasonable jury could conclude that probable cause to arrest plaintiff did not exist. In light of the foregoing, I grant summary judgment to defendants on the false arrest claim.

### III. Probable Cause Also Forecloses the Malicious Prosecution Claim

A malicious prosecution claim requires that a plaintiff show "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and

11

(4) that the proceeding was instituted with malice." *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) (quotation omitted). To convert a state law malicious prosecution claim into a violation of federal law redressable by § 1983, a plaintiff must also "show that [a] seizure [of their person] resulted from the initiation or pendency of judicial proceedings," violating the Fourth Amendment. *Rohman v. N.Y.C. Trans. Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). As to probable cause, for the purposes of a malicious prosecution claim, probable cause "is assessed in light of facts known or reasonably believed at the time the prosecution was initiated," rather than at the time of arrest. *Carthew*, 709 F. Supp. 2d at 202 (internal quotation marks omitted). "[A] malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest." *Drummond v. Castro*, 522 F. Supp. 2d 667, 678 (S.D.N.Y. 2007) (quotation omitted).

It is undisputed that a criminal proceeding was commenced against plaintiff and that it terminated in his favor. The parties have not addressed the separate element of a seizure of Mr. Sessoms's person resulting from the pendency of judicial proceedings, but plaintiff alleged that he was held in jail for six days "and was forced to return to court for eight months," which I will presume is sufficient. Am. Compl. ¶ 20; *see also Rohman*, 215 F.3d at 216 (finding an allegation of being forced to return for judicial proceedings sufficient to survive motion to dismiss).

Because I have already found probable cause to arrest, plaintiff can only save his claim for malicious prosecution by demonstrating the emergence of some mitigating fact that was discovered following his arrest. Plaintiff has not done so. The only argument plaintiff makes concerning probable cause from *after* his arrest is that Detective Barba "told the [assistant district attorney] that Mr. Sessoms made an admission that Mr. Tomoney was in his car." Pl.'s Opp'n 15

12

(quotation omitted). I have already addressed the parties' dispute over the characterization of plaintiff's statement, but the fact that Detective Barba made this statement to the ADA does not have bearing on probable cause to prosecute plaintiff. If anything, probable cause to charge plaintiff with robbery became stronger after his arrest, because on the day after Sessoms was arrested, Parish Tomoney confessed that he went "back to the car [he] came in" after robbing the barber shop. *See* Tomoney Statement 1. Accordingly, defendants have shown probable cause to prosecute plaintiff, and I grant summary judgment on this claim.

## IV. Even If No Probable Cause Existed, Detective Barba Is Entitled to Qualified Immunity Because Arguable Probable Cause Existed

Qualified immunity protects government officials from suit if the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). "The right to be free from arrest without probable cause [is] clearly established . . . ." *Id.* at 157. The right to be free from unreasonable seizure of one's person is also clearly established. *See Rohman*, 215 F.3d at 216 (2d Cir. 2000) (finding plaintiff "sufficiently demonstrated the requisite post-arraignment restraint of liberty"). Therefore, whether Detective Barba is entitled to qualified immunity on both the malicious prosecution and false arrest claims will turn on whether his actions were objectively reasonable. "An officer's determination [to arrest] is objectively reasonable if there was 'arguable' probable cause at the time of the arrest—that is, if officers of reasonable competence could disagree on whether the probable cause test was met." *Jenkins v.*

13

*City of New York*, 478 F.3d 76, 87 (2d Cir. 2006) (internal quotation omitted). "[T]he qualified immunity test is more favorable to officers than the one for probable cause." *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) (quotation omitted).

Even if I were to assume that the disputed facts identified by plaintiff were material to the question of probable cause, it is clear that Detective Barba could have reasonably believed that probable cause existed to arrest and prosecute Sessoms. When he joined the investigation, Detective Barba (1) had been told that Tomoney had been found in Sessoms's vehicle and (2) had heard Carr's statement that Sessoms was not robbed and remained in his chair during the robbery. Reasonable officers in Detective Barba's position "would, at the least, disagree about the probable cause determination under these circumstances." *Simonetti*, 202 F.3d at 635. Accordingly, even if probable cause were lacking, I find that Detective Barba is immune from suit because arguable probable cause existed.

### V. Plaintiff's Claim for Abuse of Process Lacks Evidence

A claim for abuse of process under New York law requires the plaintiff to show that a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). A malicious abuse of process claim can also be brought via § 1983. *See id.* at 77. As to the "excuse or justification" element, "numerous courts have recognized that probable cause defeats a claim for abuse of process by demonstrating that a defendant acted with 'excuse or justification.'" *Cruz v. Reiner*, No. 11-CV-2131 (BMC) (SMG), 2011 WL 6204101, at *2 (E.D.N.Y. Dec. 12, 2011) (collecting cases). The requirement of a collateral objective means that "[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process." *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984). Rather, a defendant

14

must have "had an improper *purpose* in instigating the action." *Savino*, 331 F.3d at 77 (citing *Dean v. Kochendorfer*, 237 N.Y. 384 (1924)). "Accordingly, to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.*

I have already ruled that Detective Barba had probable cause both to arrest and initiate the prosecution of plaintiff. Even if there were not probable cause, plaintiff has not adduced any evidence that Barba acted with a collateral purpose. Plaintiff contends that he has established "personal animus" because Detective Barba "deem[ed] Sessoms to be uncooperative because he asked one of the officers 'one of the guys was arrested in my car?'" and because Barba testified that he found Sessoms's behavior suspicious in part because he told officers he was on parole and asked to speak to counsel. Pl.'s Opp'n 18. Plaintiff also contends that Detective Zeigler and Detective Sergeant Diffley, who are not defendants in this case, showed "personal animus" through their actions. *Id.* at 18–19. Unlike cases finding "personal animus," which often involves abuse of process for purposes of "extortion, blackmail, or retribution," *see Jovanovic v. City of New York*, No. 04-CV-8437 (PAC), 2010 WL 8500283, at *9 (S.D.N.Y. Sept. 28, 2010), plaintiff merely speculates that because Detective Barba found him "suspicious," Barba must have had some unidentified collateral purpose in arresting Sessoms and filing a complaint against him. At this stage in the proceedings, plaintiff "may not rely on conclusory allegations or unsubstantiated speculation." *Brown*, 654 F.3d at 358 (quotation omitted). I therefore grant summary judgment on this claim.

### VI. Plaintiff Has Failed to Demonstrate Evidence Supporting Municipal Liability

Plaintiff also asserts § 1983 claims against Suffolk County. To do so, he must demonstrate that the constitutional violations he complains of were caused by a municipal

15

"policy or custom." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694–95 (1978). A policy may be express or can be inferred where "the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (quotation omitted). Liability under *Monell* is not the same as *respondeat superior* liability; the municipality must itself have taken or failed to take some action that renders it liable. *Monell*, 436 U.S. at 691.

In addition to the lack of a constitutional violation due to the existence of probable cause, plaintiff does not cite any evidence concerning the existence of an express or implied municipal "policy or custom" in Suffolk County relevant to his arrest. Plaintiff merely refers to the arrest and prosecution of former Suffolk County District Attorney Tom Spota and Chief of Public Integrity Christopher McPartland for, among other things, tampering with an individual's constitutional rights. Pl.'s Opp'n 20. Plaintiff contends that these prosecutions demonstrate that "Suffolk County law enforcement is infamous" and its "notorious violations of the rights of individuals are endemic." *Id.* These facts fail to demonstrate a policy or custom of Suffolk County that caused the complained-of violations of plaintiff's constitutional rights; that two high-ranking individuals in law enforcement in Suffolk County wholly unconnected to this case were prosecuted in an entirely unrelated action for different violations of constitutional rights is irrelevant and fails to provide evidence sufficient to support a *Monell* claim. Accordingly, I grant summary judgment to Suffolk County on this claim.

## CONCLUSION

In light of the foregoing, I grant summary judgment to defendants as to all causes of action in this case.

SO ORDERED.

Dated:    May 1, 2023                               /s/
              Brooklyn, NY                     Allyne R. Ross
                                                          United States District Judge